UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ASHTON A. SMITH ,

           Plaintiff,

                              Case No. 1:23-cv-759

v.

                              Hon. Hala Y. Jarbou

S. RYKSE, et al.,

           Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The case was previously referred to the Prisoner Civil Rights Litigation Early Mediation Program but was removed from the Program at Plaintiff's request. (ECF No. 8.) The case is now before the Court for initial screening.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, the following claims: (1) Plaintiff's official capacity claims; (2) his Eighth Amendment claims; (3) his Fourth Amendment claims; (4)

his Fifth Amendment claims; and (5) his Fourteenth Amendment equal protection claim against Defendant Massie.

The Court will serve the complaint against Defendants Rykse, Massie, Rinckey, and Ybara and the following claims remain in the case: Plaintiff's First Amendment retaliation claims against all the named Defendants and his Fourteenth Amendment equal protection claims against Defendants Rykse, Rinckey, and Ybara.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Lieutenant S. Rykse, Nurse Unknown Massie, and Corrections Officers Unknown Rinckey and Unknown Ybara in their official and personal capacities. (Comp., ECF No. 1, PageID.2.)

Plaintiff alleges that on or about May 18, 2023, at 8:30 a.m., he filed a PREA complaint on Defendant Rinckey for sexual harassment by giving it to Nurse Williams (not a party).[1] The prison guard escorting Nurse Williams told Plaintiff that he was going to inform Defendant Rinckey about the PREA complaint. Moments later, Defendant Rinckey came to Plaintiff's cell door and said, "Your [sic] going to fucking snitch on me with that PREA shit. I got a threatening behavior for you. You go read about it blind n*gger." (*Id.*, PageID.3.) Defendant Rinckey falsified two misconducts on Plaintiff later that day.

---

[1] In addition to filing his complaint (ECF No. 1), Plaintiff also filed a supplement to the complaint, which consists of attached exhibits. (ECF No. 9; ECF Nos. 9-1 to 9-13.)

Over the next five days, Defendant Rinckey falsified approximately two more misconducts on Plaintiff, stating that he was going to "bury" Plaintiff. (*Id.*) On June 12, 2023, Sergeant Bledsoe (not a defendant) denied Plaintiff the opportunity to submit additional information regarding the PREA complaint. Plaintiff subsequently filed a grievance on Sergeant Bledsoe.

On June 14, 2023, Defendant Ybara repeatedly turned Plaintiff's cell light on, knowing that it would cause Plaintiff suffering because of Plaintiff's unexplained medical condition. Defendant Ybara stated, "Let's see if you blind n*gger ass will burn like a vampire with the light on." (*Id.*, PageID.4.) Defendant Rinckey subsequently wrote two additional misconducts on Plaintiff, falsely asserting that Plaintiff had threatened him and refused to return his food tray. As a result, Plaintiff was given seven days of foodloaf and sixty days loss of privileges, causing Plaintiff to suffer from headaches, mental deterioration, and stress.

On June 17, 2023, Defendants Rinckey and Ybara forged the Deputy Warden's signature on a seven-day foodloaf restriction in order to expedite Plaintiff's false punishment. Defendant Rinckey came to Plaintiff's cell even though he was not working on Plaintiff's wing that day specifically to taunt Plaintiff about the foodloaf restriction. Defendant Rinckey stated, "How does that foodloaf taste? Your [sic] one n*gger who won't be eating fried chicken patties on Juneteenth and I'm go write you some more tickets next week n*gger." (*Id.*, PageID.5.) Defendants Rinckey and Ybara told Plaintiff to expect to get his cell torn up that evening, stating that Defendant Rykse would have a message for him and that if Plaintiff continued complaining he would be dead.

On second shift that same day, Defendant Rykse told Plaintiff to "cuff up" because he was going to the nurse's station. (*Id.*, PageID.6.) Plaintiff was ordered to remove his talking watch and, when Plaintiff asked why, Defendant Rykse stated, "Why do you need to tell the time boy?" (*Id.*) Plaintiff complied and was taken to medical. While Plaintiff was away from his cell, Defendant

3

Rykse was seen in the cell tearing up legal papers and reading them. Defendant Rykse then left Plaintiff's cell with five empty bottles of eye drops and one full bottle that had been given to Plaintiff during medication rounds earlier in the day.

While Plaintiff was in medical, Defendant Massie stated that she had Plaintiff taken from his cell because Defendant Rinckey had reported that Plaintiff was selling his eye drops. When Plaintiff explained that Defendant Rinckey was lying in order to retaliate against him, Defendant Massie said that Plaintiff needed to stop filing grievances and learn to let things go because this was the way things were going to go if Defendant Rinckey kept reporting Plaintiff. (*Id.*, PageID.7.) Defendant Massie also stated that if Plaintiff did not stop grieving Defendants Rinckey and Ybara, she would make sure his cell was shaken down because "nobody likes a rat." (*Id.*) When Plaintiff returned to his cell, he found that half of his papers had been torn and strewn around the cell and that his talking watch had been broken.

On a later date, Defendant Rykse told Plaintiff that he would return if Defendant Rinckey called for him and Defendant Rinckey stated that if Plaintiff did not heed the warning, he would kill Plaintiff and act like it was a suicide.

Based on the foregoing, Plaintiff asserts that Defendants violated his First Amendment rights by retaliating against him, and that they violated his Eighth Amendment rights by punishing him and being deliberately indifferent to his medical needs. (*Id.*, PageID.9.) Plaintiff also states that Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments, as well as under state law. (*Id.*) Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.9–10.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

### A.        Official capacity Claims

As noted above, Plaintiff sues Defendants in both their individual and official capacities. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, the Court will dismiss Plaintiff's suit for monetary relief against Defendants in their official capacities.

Plaintiff also seeks declaratory and injunctive relief. An official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, as the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In this case, Plaintiff asserts violations which have already occurred, rather than an ongoing violation of federal law. Therefore, Plaintiff's official capacity claims are properly dismissed.

B.       **Eighth Amendment Claims**

Plaintiff also suggests that Defendants' conduct violated his Eighth Amendment rights.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish

those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's

"evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

of essential food, medical care, or sanitation" or "other conditions intolerable for prison

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment

within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations

are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he

faced a sufficiently serious risk to his health or safety and that the defendant official acted with

"'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying

deliberate indifference standard to conditions of confinement claims). The deliberate-indifference

standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*,

509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

A careful review of the allegations in Plaintiff's complaint shows that he has failed to allege a deprivation "of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement. *Rhodes*, 452 U.S. at 348. Regarding Plaintiff's food loaf restriction, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Sixth Circuit has repeatedly held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002); *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990).

Nor does Plaintiff's assertion that Defendant Rykse seized a bottle of eyedrops from his cell and that Defendant Ybara repeatedly turned Plaintiff's cell light on implicate the Eighth Amendment. Although Plaintiff claims that he suffered from a medical condition, this contention is entirely conclusory. Plaintiff fails to specifically allege any details regarding his medical

condition, or to explain why he required eye drops. Moreover, although Plaintiff makes a conclusory assertion that he was subjected to sexual harassment, he fails to allege any facts in support of this claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Finally, the Court notes that allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985). Therefore, Plaintiff's Eighth Amendment claims will be dismissed.

### C.      Fourth Amendment Claims

Plaintiff claims that Defendants violated his rights under the Fourth Amendment. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared

to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For the same reasons, the Court concludes that Plaintiff has failed to state a claim under the Fourth Amendment.

### D.     Fifth Amendment Claims

Plaintiff makes a conclusory statement that Defendants' actions violated his rights under the Fifth Amendment. The Double Jeopardy Clause of the Fifth Amendment precludes successive state proceedings that are essentially criminal in nature. *Breed v. Jones*, 421 U.S. 519, 527–28 (1974). In *Breed*, the Court noted that criminal proceedings impose heavy pressures and burdens on a person charged. *Id.* at 529–530. The purpose of the Double Jeopardy Clause is to ensure that a person not be subject to such a proceeding more than once for the same offense. *Id.* at 530.

The Fifth Amendment also protects a person's right against self-incrimination. *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1975). A prisoner may remain silent when charged with a prison rule infraction, but his silence during a prison disciplinary hearing may be weighed against him in determining his guilt. *Id.* at 316–19. Plaintiff in this case failed to allege any facts which would implicate his rights under the Fifth Amendment. Therefore, Plaintiff's Fifth Amendment claims will be dismissed.

### E.     First Amendment Retaliation Claims

Plaintiff's First Amendment individual capacity retaliation claims against Defendants may not be dismissed at screening. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

10

establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A careful review of the complaint in this case shows that Plaintiff alleges sufficient facts to support his claim that Defendants took adverse actions against him, and that the actions were motivated by a desire to retaliate against Plaintiff for his use of the grievance procedure to file a PREA grievance against Defendant Rinckey and to file other grievances. Therefore, the Court will not dismiss Plaintiff's retaliation claims on initial screening.

**F.       Equal Protection Claims Against Defendants Rykse, Rinckey,  Massie, and Ybara**

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff fails to allege any facts in support of an equal protection claim against Defendant Massie. As noted above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

However, Plaintiff specifically alleges that Defendants Rykse, Rinckey, and Ybara repeatedly used racial slurs while subjecting him to the allegedly false misconduct tickets and other mistreatment. The Court concludes that Plaintiff has stated sufficient facts to support his Fourteenth Amendment equal protection claims against Defendants Rykse, Rinckey, and Ybara.

### G.    State law claims

To the extent that Plaintiff asserts state law claims, the Court notes that claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

However, because federal claims remain in this case, the Court will invoke supplemental jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court will also dismiss, for failure to state a claim, the following claims against the named Defendants: (1) Plaintiff's official capacity claims; (2) his Eighth Amendment claims; (3) his Fourth Amendment claims; (4) his Fifth Amendment claims; and (5) his Fourteenth Amendment equal protection claim against Defendant Massie. Plaintiff's First Amendment retaliation and state law claims against all the named Defendants and his Fourteenth Amendment equal protection claims against Defendants Rykse, Rinckey, and Ybara will remain in the case.

An order consistent with this opinion will be entered.

Dated: August 16, 2023                         /s/ Hala Y. Jarbou
                                               HALA Y. JARBOU
                                               CHIEF UNITED STATES DISTRICT JUDGE