UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHTON SMITH, #619752,

                 Plaintiff,                            Hon. Hala Y. Jarbou

v.                                          Case No. 1:23-cv-759

S. RYKSE, et. al.,

                 Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 22) and Defendant's Motion for Summary Judgment (ECF No. 28).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be denied.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) where the events giving rise to this action occurred. Plaintiff initiated this action against Lieutenant Shawn Rykse, Nurse Sadie Massie, and Corrections Officers Joshua Rinckey and Silverio Ybarra.   In his complaint, Plaintiff alleges the following.

On or about May 18, 2023, he filed a Prison Rape Elimination Act (PREA) complaint against Defendant Rinckey.   After learning that Plaintiff had filed a PREA

grievance against him, Rinckey stated to Plaintiff, "Your [sic] going to fucking snitch on me with that PREA shit. I got a threatening behavior for you. You go read about it blind n*gger."  Later that day, Defendant Rinckey falsely charged Plaintiff with two misconduct violations.  Over the next several days, Defendant Rinckey falsely charged Plaintiff with two additional misconduct violations.

On June 14, 2023, Defendant Ybarra repeatedly turned Plaintiff's cell light on, knowing that it would cause Plaintiff suffering due to his vision impairment. Defendant Ybarra stated, "Let's see if your blind n*gger ass will burn like a vampire with the light on."  Defendant Rinckey subsequently charged Plaintiff with two more false misconduct charges which resulted in Plaintiff receiving seven days of foodloaf and sixty days loss of privileges.

On June 17, 2023, Defendant Rinckey taunted Plaintiff about his foodloaf restriction.  Defendant Rinckey stated to Plaintiff, "How does that foodloaf taste? Your [sic] one n*gger who won't be eating fried chicken patties on Juneteenth and I'm go (sic) write you some more tickets next week n*gger."  Defendants Rinckey and Ybarra also told Plaintiff to expect to get his cell torn up that evening and, furthermore, that if he continued complaining he would end up dead.

Later that day, Plaintiff was escorted to the nurse's station where he met with Defendant Massie.  While Plaintiff was meeting with Massie, Defendant Rykse entered Plaintiff's cell and destroyed Plaintiff's legal property.  Rykse also confiscated Plaintiff's prescription eye-drops.  Defendant Massie informed Plaintiff that

Defendant Rinckey had reported that Plaintiff was selling his eye drops.   When Plaintiff explained that Rinckey was lying in order to retaliate against him, Massie said that Plaintiff needed to stop filing grievances and learn to let things go. Defendant Massie also stated that if Plaintiff did not stop grieving Defendants Rinckey and Ybarra, she would make sure his cell was shaken down because "nobody likes a rat."

On a later date, Defendant Rykse told Plaintiff that he would return if Defendant Rinckey called for him and Defendant Rinckey stated that if Plaintiff did not heed the warning, he would kill Plaintiff and act like it was a suicide.

Plaintiff alleged that Defendants violated his First and Eighth Amendment rights.   Plaintiff further alleged that Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments, as well as under state law.   Most of Plaintiff's claims were dismissed on screening.   (ECF No. 11).   At this juncture, the only claims remaining are Plaintiff's (1) First Amendment retaliation and state law claims against Defendants Rykse, Ybarra, Rinckey, and Massie and (2) Fourteenth Amendment equal protection claims against Defendants Rykse, Ybarra, Rinckey, and Massie.   Defendants now move for relief on the ground that Plaintiff has failed to properly exhaust his administrative remedies.   Plaintiff has responded to the motions. The Court finds that oral argument is unnecessary.   *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.   *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."   *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot

merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies.   *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   This obligation only extends, however, to such administrative remedies as are available.   *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.   *Ibid*.   With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."   *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to >properly exhaust.=   The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison=s requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his

control, or the issue falls within the jurisdiction of Internal Affairs.   MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019).   The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue.   (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.   MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019).   The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."   MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.   MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019).   If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.   MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

In support of their motions, Defendants advance two separate arguments each of which is examined below.

A.    Plaintiff's Claims Involving Misconduct Charges

As noted above, Plaintiff alleges that he was falsely charged with several misconduct violations as a form of retaliation.   It is well understood that to properly exhaust a claim that a misconduct charge was asserted for retaliatory reasons, the

prisoner must assert the claim during the initial misconduct hearing.  *See, e.g., Siggers v. Campbell*, 652 F.3d 681 (2011).  Asserting in the administrative hearing that the misconduct charge was brought for retaliatory reasons is only the first step of the exhaustion process, however.  To properly exhaust such a claim, the prisoner must timely "file a motion or application for rehearing."  *Ayotte v. Stemen*, 2019 WL 2219739 at *5 (E. D. Mich., Feb. 27, 2019).

Defendants argue that Plaintiff failed to properly exhaust any claims that he was charged with misconduct violations for retaliatory reasons.   The Court is unpersuaded. Defendants argue that Plaintiff failed to assert in any administrative hearing the claim that the misconduct charge was motivated by retaliatory animus.   Defendants have failed, however, to support this assertion with sufficient evidence.

Defendants have submitted copies of several Misconduct Hearing Reports.   (ECF No. 23, PageID.156-72).   This evidence, however, is insufficient for Defendants to meet their burden.   While these items may not establish that Plaintiff raised his retaliation claims during the hearing, neither do these items demonstrate that Plaintiff failed to do so.   Defendants have presented no evidence establishing that the hearing officer was generally obligated to, or did in these particular instances, record in the hearing report  or investigation report every statement, assertion, defense, or claim by the individuals participating in an investigation or hearing.   The Court further notes that, while Defendants could have secured an affidavit from the hearing officers regarding this issue, they declined to do so.   Simply put, the evidence submitted by Defendants

does not definitively establish that Plaintiff failed to raise the issue of retaliation during his administrative hearings, but instead merely establishes that the hearing officer did not record whether Plaintiff did so.   As for whether Plaintiff sought re-hearing in any of these matters, Defendants offer neither argument nor evidence.

  B.  Plaintiff's Additional Efforts to Exhaust his Claims

  With respect to the claims that Plaintiff was required to exhaust via the prison grievance process, Defendants next argue that Plaintiff failed to properly exhaust his claims before initiating the present action.   Plaintiff counters that, because prison officials refused his requests to help him submit grievances, the grievance process was unavailable.

  Plaintiff has presented evidence that he is deemed "visually impaired" by the MDOC.   (ECF No. 37, PageID.284, 290).   Specifically, Plaintiff's "[r]ight eye has no useable sight" and his left eye is "functional" only when he wears a special contact lens. (*Id.*).   Plaintiff cannot read or complete grievance forms without this special contact lens.   (*Id.*, PageID.288).   Plaintiff was without his special contact lens from March 14, 2023, through July 25, 2023.   (*Id.*, PageID.317, 326-27).

  According to the MDOC grievance policy, "[w]ardens and FOA Region Managers shall ensure prisoners and parolees are provided assistance in completing a grievance form, if s/he determines it is needed."   MDOC Policy Directive 03.02.130 ¶ N.   Plaintiff requested, on more than one occasion, that he either be provided his special contact lens or assistance completing grievance forms.   (ECF No. 37, PageID.326-37).   Plaintiff's

requests for assistance were dismissed and Plaintiff was not provided his special contact lens until July 25, 2023, after the present action was initiated.   (*Id.*).

As the Supreme Court has observed, a prisoner need only exhaust such administrative remedies as are available.  *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones"). The evidence presently before the Court, interpreted in a light most favorable to Plaintiff, could lead a reasonable juror to conclude that the grievance process was rendered unavailable to Plaintiff.  Thus, a jury could reasonably find that Plaintiff exhausted his *available* administrative remedies.   In sum, the undersigned finds that Defendants have failed to satisfy their burden on the exhaustion question and, therefore, recommends that Defendants' motions for summary judgment be denied.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that both motions for Summary judgment (ECF No. 22, 28) be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 21, 2024

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge